BERNARD M. DURKIN

*v.*

ROBERTA CONNELLY, executrix, &c.

[Submitted December 21st, 1914. Determined December 27th, 1914.]

1. A court of equity cannot decree specific performance of a contract to sell trust land by an executrix, where by the terms of the will such executrix has no power to perform her contract.

2. A 'naked power to sell under a trust instrument does not include authority to arrange terms for postponing payment of the price, or to accept a mortgage or anything other than money in payment.

3. Where an executrix contracts to sell land, under a power in the will to sell and invest the proceeds, an acceptance by her of a second mortgage on the property to secure part of the price cannot be regarded as an investment of the proceeds of sale within the power given so as to enable the court to decree specific performance of the contract, since under the Orphans Court act (*3 Comp. Stat. 1910 p. 3864 § 137*) such an investment by a trustee is not authorized.

4. Especially where beneficiaries are not parties to the suit, specific performance will not be granted of an executrix's contract to sell land of the estate for the total price of $45,000, of which $5,000 and the

amount of a first mortgage is to be paid in cash and the balance by a second mortgage to the executrix, where the largest first mortgage which can be placed is only $16,000, since that would compel the executrix to invest $24,000 of trust funds in a second mortgage on property on which only $16,000 could be obtained on first mortgage.

Complainant seeks a decree for the specific performance of a contract wherein defendant, Roberta Connelly, as executrix and trustee of her deceased husband's will, agreed to convey to complainant certain real estate in Atlantic City.

Defendant resists performance under the claim that the will of her deceased husband does not clothe her with power to make the conveyance upon the terms stated in the contract which complainant seeks to enforce and which she admits having executed.

By the will of defendant's deceased husband his entire estate, after the payment of certain legacies, is given to defendant during her life, or widowhood in trust, with direction for her to collect, receive and appropriate the income for her support and the support and tuition of testator's children, subject to these bequests and trust testator's entire estate is given to his children, to be delivered to them upon the death or marriage of his widow. The power of sale contained in the will is as follows:

"I hereby give to my said wife, as trustee and executrix, full power and authority to sell and convey any and all of my real estate at private or public sale and to invest the proceeds or to lease the same or any part thereof at her discretion."

The terms of sale set forth in the contract, which complainant now seeks to enforce, are as follows: The contract price is $45,-000, payable in the following manner:

"Three hundred dollars on the signing of this agreement, the receipt whereof is hereby acknowledged; forty-seven hundred dollars on delivery of deed, together with proceeds of such first mortgage as may be created on said premises by the purchaser with consent of party of first part [defendant] and a second mortgage securing the balance of the consideration above stated, payable in five years, bearing interest at six per cent. accompanied with Fire Insurance of not less than eight thousand dollars and which mortgage shall be reduced semi-annually by payment of at least six hundred fifty dollars each."

It is claimed by complainant (and the evidence at final hearing establishes the fact) that before the bill was filed the amount of the first mortgage was agreed upon as $16,000.

The decree which is sought is therefore a decree compelling defendant to convey the premises in question to complainant and accept in cash $5,000, together with $16,000 additional cash, which last-named sum is to be raised by complainant on a $16,000 first mortgage on the premises to be conveyed to him, and to accept a second mortgage from complainant for $24,000, payable in the manner already stated, representing and securing the payment of the balance of the purchase-money.

*Messrs. Bourgeois & Coulomb,* for the complainant.

*Mr. Clarence L. Cole,* for the defendant.

LEAMING, V. C.

It is obvious that this court cannot by its decree require the specific performance of a contract of sale which has been made by a trustee if by the terms of the trust the trustee had no power to do what he contracted to do; in such circumstances a trustee will not be compelled to commit a breach of his trust. *Repetto* v. *Baylor, 61 N. J. Eq. 501, 506.* In *Repetto* v. *Baylor, supra,* it is also held that a mere power to sell does not include any power to arrange terms of postponed payment of price, or to accept a mortgage or anything else than money in satisfaction of it. If the principles defined in *Repetto* v. *Baylor* are here followed, it is clear that no relief can be afforded complainant in this case, for, by the terms of the contract here sought to be enforced, a postponed payment of more than one-half of the purchase price is provided for and a second mortgage on the premises conveyed is contemplated to secure such postponed payment.

With the power of sale here involved there is added the power "to invest the proceeds," but this added power cannot be made the basis of a decree herein, for, if the acceptance of a second mortgage on the property sold to secure the payment of a part of the purchase price is regarded as an investment of a part of the proceeds of sale, such an investment is proposed to secure in

*84 N. J. Eq.*                Durkin *v.* Connelly.

a manner not authorized by our Orphans Court act (*3 Comp. Stat. p. 3864 § 137*) ; the trustee cannot be properly required by decree of this court to make such an investment.

It is urged in behalf of complainant that *Repetto* v. *Baylor, supra,* is not in harmony with the earlier case of *Woodruff* v. *Lounsberry, 40 N. J. Eq. 545.* In that case a will authorized and directed executors to sell and convey real estate and to invest the proceeds thereof upon first bond and mortgage on property worth double the amount or in stocks or bonds of the United States or the State of New Jersey, and pay the income to testator's widow. The executors sold certain real estate at a good price and accepted in payment forty per cent. cash and purchase-money mortgages—first liens—to secure the sixty per cent. deferred payments. Losses having been sustained on these mortgages, the question before the court was whether the executors should be compelled to make good these losses. It will be observed that the mortgages accepted by the executors were in amount the percentage of value of the mortgaged premises authorized by the Orphans Court act. In determining that the executors should not be charged the losses, the learned ordinary said: "Although the executors were, by the will, directed to invest the proceeds of the sale of the property upon first bond and mortgage of property worth twice the amount invested, or in stocks or bonds of the United States, or of this state, it would not be just to hold them bound by that provision in taking mortgages for part of the purchase-money of the property. Those mortgages were not taken as an investment of proceeds of sales, but to secure the payment of part of the price at which the property was sold. They were themselves proceeds of sales. In taking the mortgages for which the accountant asks allowance, the executors appear to have acted in good faith and for the best interest of the estate. They, therefore, ought not to be charged with them."

It is, therefore, insisted in behalf of complainant that *Woodruff* v. *Lounsberry* recognizes a power to sell as including a power to postpone payments of the purchase price for a period subsequent to the sale, and also determines that the acceptance of a

purchase-money mortgage for a part of the purchase price is not
to be regarded as an exercise of the power of investment. I am
unable to adopt that view. In *Woodruff* v. *Lounsberry* the pri-
mary inquiry was whether under the special circumstances of
that case the executor should be compelled to bear the loss which
had arisen from shrinkage of the value of the tracts of land on
which he had taken purchase-money mortgages. The learned
chancellor points out with clearness and emphasis that the sales
had been made at good prices and that the purchase-money mort-
gages taken were in amount but sixty per cent. of the values of
the land covered by them, and that the executors had acted in
good faith and for the best interest of the estate; he accordingly
held that although the will limited mortgage investments to fifty
per cent. of the value of the land, it would not be just to hold
the executors in the circumstances stated. In *Wms. Ex. 1530*, it
is laid down as a general rule adopted by the courts in suits to
establish liability of executors for breach of trust duties, that
while care must be taken to guard against an abuse of their trust,
yet, in order not to deter persons from undertaking these offices,
the court is extremely liberal in making every possible allowance,
and cautious not to hold executors and administrators liable upon
slight grounds. In *Perrine* v. *Vreeland, 33 N. J. Eq. 102; S. C.
affirmed, 33 N. J. Eq. 596*, an executor, acting in good faith and
under advise of counsel, retained a fund after it was payable to
one who was entitled to it by the will, and in good faith invested
the fund, after the time when it should have been by him paid
over, in a mortgage on property then worth more than three times
the amount of the loan, but which property so depreciated in
value that the executor was compelled to buy it in upon fore-
closure. In a suit to charge the executor with the loss, it was
held that, notwithstanding his breach of trust duties, he should
not be charged, but should be allowed to turn over the land in
lieu of the fund. It may well be, as suggested in *Woodruff* v.
*Lounsberry,* that in a suit in which the primary issue is whether
an executor shall be made personally liable for losses sustained
a purchase-money mortgage should not be regarded as so clearly
an unauthorized investment as to justify an imposition of per-
sonal liability based on a breach of trust duties, and in like cir-

cumstances a postponement of payment of purchase price under a mere power of sale may not be deemed adequate to impose personal liability for loss. But in a suit for specific performance of a contract of sale made by an executor the primary inquiry is whether the contract is one which the executor had power to make and which a court of equity should compel him to specifically perform; before that form of relief should be administered both these inquiries must be clearly answered in the affirmative.

As already stated, in *Repetto* v. *Baylor, supra,* this court is committed to the view that a mere power of sale does not include any power to arrange terms of postponed payments of price, or to accept a mortgage or anything else than money in satisfaction of it. If the added power to invest proceeds of sale justifies the arrangement of postponed payments secured by a purchase-money mortgage, it is necessarily because the purchase-money mortgage is in the nature of an investment.

The second mortgage, in which the funds of this estate are proposed to be in effect invested, is $24,000 in amount, and is to be second in lien to a mortgage of $16,000. The total proposed purchase price is $45,000. This makes the combined encumbrances $40,000, or eight-ninths of the entire purchase price. The testimony at the hearing disclosed that $16,000 was the largest amount that could be procured as a loan on first mortgage security. This court is therefore asked to compel this executrix, in effect, to invest $24,000 of trust money in a second mortgage (subject to a prior lien of $16,000) on a property on which $16,000 was the utmost amount that any moneyed concern was willing to invest on first mortgage security. It is clear that no court would advise such an investment of trust fund, and the *cestuis que trust,* whose interests in the transaction are paramount, are not made parties to the bill. In such circumstances, specific performance should not be decreed even though the contract of the trustee be deemed within his powers; complainant should be left to his remedy at law. In *1 Lew. Trusts 423,* it is said:

"If trustees, or those who act by their authority, fail in reasonable diligence in inviting competition, or in the management of the sale (as if they contract under circumstances of haste or improvidence, or con-

Elizabeth & Trenton R. R. Co. *v.* Woodbridge.     *84 N. J. Eq.*

trive to advance the interests of one party at the expense of another) they will be personally responsible for the loss to the suffering party; and the court, however correct the conduct of the purchaser, will refuse at his instance to compel the specific enforcement of the agreement."

In the cases cited in the foot-note to the text above quoted will be found numerous cases in which courts of equity have refused this form of relief against a trustee out of considerations alone involving the best interests of the *cestuis que trust*.

I am obliged to advise a decree denying the relief sought by the bill.